No. 25-1368

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

MASSACHUSETTS FAIR HOUSING CENTER et al., *on behalf of themselves and all those similarly situated*,

Plaintiffs-Appellants,

*v.*

THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al.,

Defendants-Appellees,

On Appeal from the United States District Court
for the District of Massachusetts
Case No. 3:25-cv-30041-RGS

**EMERGENCY MOTION FOR EXPEDITED BRIEFING SCHEDULE**

Lila Miller (Bar No. 1216671)
Reed Colfax (Bar No. 1216672)
RELMAN COLFAX PLLC 1225
19th Street NW Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
lmiller@relmanlaw.com
rcolfax@relmanlaw.com

April 16, 2025                                    *Attorneys for Plaintiffs-Appellants*

# INTRODUCTION

Plaintiffs-Appellants (the "Organizations") hereby move for an expedited briefing schedule on their appeal of the District Court's dissolution of the temporary restraining order in the trial court. An expedited briefing schedule is necessary to prevent irreparable harm to the Organizations, including the possibility of some of the Organizations going out of business if the appeal is not resolved promptly.

This case arises from Defendant-Appellees' termination of the Organizations' grants awarded by Defendant-Appellee the Department of Housing and Urban Development ("HUD") pursuant to Congressional appropriations and the Fair Housing Act. The District Court initially found that the circumstances merited a temporary restraining order but later dissolved its order and effectively precluded the possibility of any preliminary relief. This reversal was based on a finding that the District Court lacked jurisdiction after the preliminary *per curiam* order in *Dep't of Educ. v. California*, 604 U.S. ---, 145 S. Ct. 966, 968 (2025) (noting that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'").

In dissolving the temporary restraining order, the District Court conducted no analysis of the Organizations' claims, how the claims compare to those pursued in *California,* or whether the claims derive from a contract with the United States.

They do not: the Organizations argue that HUD's action was inconsistent with federal law, not that HUD's action was inconsistent with the terms and conditions of their grant awards. The District Court had and continues to have jurisdiction over the Organizations' claims. The substantive findings of likelihood of success on the merits and irreparable harm that necessarily supported the District Court's issuance of the temporary restraining order demand restoration of the order.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2025, HUD and the Department of Government Efficiency ("DOGE") terminated 78 Fair Housing Initiatives Program (FHIP) grants. The grants, which are an integral part of the Fair Housing Act's enforcement mechanism, comprise the primary funding for many fair housing groups around the country. Congress established the FHIP program in 1992 to operationalize the FHA's broad remedial purpose by directing HUD to award grants for private organizations to carry out fair housing work whenever Congress appropriates funds for that purpose. *See* 42 U.S.C. § 3616a. Over the following 33 years, Congress appropriated, and HUD has awarded, funding to hundreds of qualified, private nonprofit fair housing agencies to conduct fair housing programs that help ensure progress toward the goals of the FHA. *Id.*

HUD and DOGE's February 27 midstream termination of existing FHIP grants was inexplicable, unexpected, and abrupt. The terminations were carried out

3

through a form letter asserting that HUD was terminating the grants "at the direction of [the] Department of Government Efficiency" (DOGE), "pursuant to" the executive order establishing that body. The letter said the grants were being terminated because they "no longer effectuate[] the program goals or agency priorities." No further explanation was provided.

On March 13, 2025, four fair housing organizations that had their FHIP grants summarily terminated filed the underlying action on behalf of themselves and those similarly situated. The complaint set forth an Administrative Procedures Act claims against HUD and an *ultra vires* claim against DOGE, alleging that the form-letter terminations of the FHIP grants were arbitrary and capricious as they relied on an inapplicable executive order and provided a boilerplate explanation that is contradicted by the evidence. The Organizations sought a temporary restraining order, which the District Court granted on March 26, 2025, basing its decision on "the reasons discussed in depth in *California v. U.S. Department of Education,* 2025 WL 878431, at *1 (1st Cir. Mar. 21, 2025), and *California v. U.S. Department of Education,* 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025) . . . ." (ECF 31).

The temporary restraining order reinstated the Organizations' FHIP grants, allowing them to restart the fair housing-related work that had been suspended after the February 27 termination. On April 4, 2025, the Supreme Court issued its

interim ruling in the *California case*, *California*, 145 S. Ct. at 966 (2025) (per curiam). In that decision, the Supreme Court stayed the temporary restraining order that this Court had declined to stay in the *California* case. The Supreme Court suggested that the claims in that case may be properly heard in the Court of Federal Claims and that the state plaintiffs would not face irreparable harm in the absence of temporary relief. Relying on that decision, Defendants here sought to dissolve the temporary restraining order. The District Court granted the motion in a paperless electronic order, finding without any case-specific evaluation that the Supreme Court's *California* case directs "that, for jurisdictional purposes, the proper forum for this case is the Court of Federal Claims." ECF 42.

A case-specific assessment of jurisdiction here would have revealed that this case and *California* are distinct for jurisdictional purposes. The plaintiff States in *California* linked their APA claims to the terms and conditions of the grant agreements at issue, meaning that resolving the States' claims was akin to enforcing a contract. In contrast, the Organizations' APA claim here are resolvable without even looking at the grant documents because the Organizations did not analyze or rely on the terms or conditions of their grant agreements when explaining why Defendants' action violated the APA. (ECF 5 at 9–13). The Organizations also do not seek damages for breach of contract; they seek equitable relief to reestablish the grantor/grantee relationship.

## ARGUMENT

I. **An Expedited Appeal Is Necessary to Minimize the Irreparable Harm the Organizations Will Suffer During the Pendency of the Appeal**

The Organizations—the four named plaintiffs and 62 other putative class member organizations—are spread across 30 states, will lose more than $12 million in FHIP funding this year alone from the termination decision, and will lose more than $30 million in already-awarded funding overall. The loss of funding has an extraordinary impact on the small-budget organizations and means, as a practical matter, that the harm flowing from the terminations will be felt in hundreds of neighborhoods and by thousands of families served by the Organizations. The termination decision has already forced the Organizations to halt the provision of certain critical housing services, with devastating effects on their clients. Under the pendency of the temporary restraining order, many organizations were able to restart those services, but with the dissolution now have to once again cease operations. The Organizations will have to lay off staff members whose positions are funded in whole or in part by the terminated FHIP grants. The Organizations' core programs supported by FHIP awards are being eliminated or reduced. For some Organizations, the threat to their very existence increases every day that the arbitrary termination of their grants stands. Without the resources to fund the activities they exist to provide, the Organizations cannot maintain staff or pay necessary day-to-day operating costs.

The grant terminations not only have an irreparable effect on the Organizations, but also cause immeasurable harm to the public, which benefits from ensuring compliance with the FHA's antidiscrimination and anti-segregation mandates. Allowing unequal treatment in housing to go unchecked because an integral part of the enforcement process has been defunded necessarily means increased harm to American citizens who have been victimized by housing discrimination. The daily work by the Organizations helps ensure that individuals and families in their communities avoid homelessness, stave off evictions, find safe places to live, remain in affordable housing, ensure that their homes are accessible, and seek redress for discrimination. Shortening the time to this Court's consideration of the dissolution of the temporary restraining order will minimize the harm to the Organizations and the individuals, families, and communities they serve before the temporary restraining order can be restored and the funding and services restarted.

## II. This Court May Review the Merits of Plaintiffs' Appeal

As Plaintiffs will address more fully in their forthcoming brief, this Court may exercise appellate jurisdiction over Plaintiffs' interlocutory appeal from the District Court's dissolution order just as it entertained the appeal from entry of a temporary restraining order in the *California* case. *California v. Dep't of Educ.*, 132 F.4th 92, 96 (1st Cir. 2025) (declining to stay temporary restraining order pending

appeal and retaining appellate jurisdiction). A party may appeal as of right from a district court order that "refus[es] or dissolve[es]" an injunction. 28 U.S.C. § 1292(a)(1). A district court's decision on preliminary relief can qualify as an appealable injunction, notwithstanding a "temporary restraining order" label, and that is the case here. *See Almeida-León v. WM Cap. Mgmt., Inc.*, 2024 WL 2904077, at *4 (1st Cir. June 10, 2024) (collecting cases).

The reasoning of the District Court's order dissolving the temporary restraining order extends to, and thus appears to resolve ex ante, any motion for a preliminary injunction. In other words, the order effectively deprives Plaintiffs of the opportunity to seek preliminary relief. Indeed, when Plaintiffs sought a stay pending expedited appeal for this express reason, the District Court did not instruct them to proceed with their preliminary injunction brief, but instead stayed the case. ECF 42. The temporary restraining order here is also more akin to a preliminary injunction because, like the temporary restraining order in *California*, it received full briefing from the parties, as well as a hearing. *California v. Dep't of Educ.*, 132 F.4th at 96 (noting the ability of the defendants to present arguments in opposition to the temporary restraining order). Accordingly, the dissolution order should be treated as an appealable order dissolving an injunction. *See California*, 145 S. Ct. at 968 (exercising appellate review over a request to stay a temporary restraining order).

In the alternative, this Court may overlook any perceived defects in appellate jurisdiction because they are statutory in nature, not constitutional. *See Sinapi v. R.I. Bd. of Bar Exam'rs*, 910 F.3d 544, 550 (1st Cir. 2018); *see also Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 59–60 (1st Cir. 2003) (collecting cases). The potential appellate jurisdictional issue in this case arises from whether the temporary restraining order dissolution is appealable under Section 1292(a)(1), which is statutory. Accordingly, this Court may rely on its well-established practice of "bypassing jurisdictional questions to consider the merits." *Sinapi*, 910 F.3d at 550. As in the *California* matter, this Court should again "sidestep" the jurisdictional question and hear this appeal. *California*, 132 F.4th at 96.

## CONCLUSION

Based on the foregoing, Plaintiffs-Appellants respectfully request that the Court grant the Motion and Order the following briefing schedule for this appeal:

- Plaintiffs-Appellants' opening brief due April 22;
- Defendants-Appellees' responsive brief due April 29; and
- Plaintiffs-Appellants' reply brief due May 2.

Dated: April 16, 2025

Respectfully submitted,

*/s/ Lila Miller*
Lila Miller (Bar No. 1216671)
Reed Colfax (Bar No. 1216672)

9

RELMAN COLFAX PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
lmiller@relmanlaw.com
rcolfax@relmanlaw.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFCATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 1,770 words. The motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word 2016 in proportionately spaced 14-point Times New Roman typeface.

Dated: April 16, 2025
*s/ Lila Miller*
Lila Miller

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system.

Dated: April 16, 2025                                     *s/ Lila Miller*
                                                                               Lila Miller

                                                                               *Counsel for Plaintiffs-Appellants*